**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| | CLASS ACTION |
| Plaintiff, | COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| vs. | |
| XEROX CORPORATION, URSULA M. BURNS, LUCA MAESTRI, KATHRYN A. MIKELLS, LYNN R. BLODGETT, and ROBERT K. ZAPFEL, | DEMAND FOR JURY TRIAL |
| Defendants. | |

**INTRODUCTION**

Plaintiff Oklahoma Firefighters Pension and Retirement System ("Oklahoma Fire" or "Plaintiff"), individually and on behalf of all others similarly situated, alleges the following based on personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based upon the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of press releases and other public statements issued by Xerox Corporation ("Xerox" or the "Company"), Xerox's filings with the U.S. Securities and Exchange Commission ("SEC"), and media and analyst reports about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### SUMMARY OF THE ACTION

1.      This is a securities class action on behalf of all persons or entities who purchased or otherwise acquired Xerox common stock between April 23, 2012 and October 23, 2015, inclusive (the "Class Period").  The action is brought against Xerox and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder.

2.      Xerox is a global provider of document processing services and printing machines.  The Company's primary reporting segments are: (1) Services, and (2) Document Technology.  The Services segment revenues are generated by the delivery of business process and document outsourcing services to small business, large corporations, and government agencies.  The Services segment accounted for approximately 55 percent of Xerox's 2015 total revenue.  The Document Technology segment, which includes the sale and support of printing and copying machines, accounted for approximately 40 percent of Xerox's 2015 revenues.

3.      Included in the Services segment is the Xerox "Health Enterprise" service, which is a software management solution designed to assist state agencies administer their respective Medicaid programs.  The product provides software solutions for states to manage all aspects of their contemporary Medicaid programs in accordance with federal regulations.  Prior to and during the Class Period, Xerox contracted with various states to implement the Health Enterprise system in accordance with each state's specific Medicaid requirements.

4.      During the Class Period, Xerox repeatedly touted the Health Enterprise business as an important growth area for the Company, which would operate at low cost and high profit margin.  However, Defendants' (as defined herein) Class Period statements pertaining to the profitability and growth prospects of the Health Enterprise business were materially false and

misleading because Defendants failed to disclose that: (1) the Company's existing Health Enterprise projects were experiencing major delays and cost overruns; (2) the Company would be unable to deliver Health Enterprise implementations at sustainable profits; and (3) as a result, the Company's positive statements about its business, operations, and prospects lacked a reasonable basis.

5.      The truth about the failing Health Enterprise business began to emerge on October 22, 2014, when Xerox issued a press release announcing financial results for the third quarter ended September 30, 2014, which included disappointing margins in the Services segment. Defendants blamed lower than expected margins on high expense levels incurred on the protracted implementation of its existing Health Enterprise projects.  Despite these mounting costs, Xerox assured investors that these costs were "more contained in the third quarter" and the Company was making "good progress" within Health Enterprise.

6.      On news of the Company's disappointing margins, Xerox common stock fell $0.94 per share, or 7.50 percent, to close on October 22, 2014 at $11.57 per share.

7.      Thereafter, on April 24, 2015, Xerox issued a press release announcing financial results for the first quarter ended March 31, 2015, which included disappointing Services segment margins primarily due to "higher costs" associated with the prolonged implementation of existing Health Enterprise projects.  Despite these mounting costs, Defendants continued to assure investors that the Company's Services business segment was performing well.

8.      On news of the Company's disappointing margins, Xerox common stock fell $1.10 per share, or 8.75 percent, to close at $11.48 per share on April 24, 2015.

9.      On October 13, 2015, Xerox issued a press release announcing that the Company would be recording a $385 million pre-tax charge with its third quarter 2015 results, relating to

assets and unrecoverable costs associated with its Health Enterprise implementation projects. Xerox further revealed that it would not complete its Health Enterprise projects in California and Montana.

10.     On news of the pre-tax charge and the loss of the California and Montana Health Enterprise projects, Xerox common stock dropped $0.32 per share, or 3.17 percent over the following two trading sessions, to close at $9.83 per share on October 14, 2015.

11.     Finally, on October 26, 2015, before the trading session, Xerox released third quarter 2015 financial results that missed analysts' estimates due in part to lost revenues from the termination of the California and Montana projects.  The Company explained that the loss of these contracts would result in lower revenues in each of the next three quarters.  In addition, Xerox announced that its Board had authorized a strategic review of the Company's entire business portfolio.

12.     On news of disappointing quarterly results caused by the termination of certain Health Enterprise projects, the Company's common stock fell $0.30 per share, or 3.00 percent, to close on October 26, 2015 at $9.73 per share.

13.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

14.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

15.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the preparation and/or dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  Xerox transacts business in this District, and the Company's stock trades in this District on the New York Stock Exchange.

16.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

17.     Plaintiff Oklahoma Fire purchased Xerox common stock during the Class Period, as set forth in the certification attached hereto, and was damaged as the result of Defendants' wrongdoing as alleged in this complaint.

18.     Defendant Xerox is a New York corporation with its principal executive offices located at 45 Glover Avenue, P.O. Box 4505, Norwalk, Connecticut, 06856-4505. The Company's stock is listed on the New York Stock Exchange (the "NYSE") under the ticker symbol "XRX."

19.     Defendant Ursula M. Burns ("Burns") is the Chief Executive Officer of Xerox and Chairman of the Company's Board of Directors.

20.     Defendant Luca Maestri ("Maestri") was Chief Financial Officer of Xerox from the start of the Class Period until his resignation in February 2013.

21.     Defendant Kathryn A. Mikells ("Mikells") was Chief Financial Officer of Xerox from May 2013 until her resignation in October 2015.

22.     Defendant Lynn R. Blodgett ("Blodgett") was the President of Xerox Services and an Executive Vice President of the Company from the start of the Class Period until his resignation from that role in March 2014.

23.     Defendant Robert K. Zapfel ("Zapfel") has been the President of Xerox Services and an Executive Vice President of the Company since April 2014.

24.     Defendants Burns, Maestri, Mikells, Blodgett, and Zapfel are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Xerox's reports to the SEC, press releases, and presentations to securities analysts, money portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

25.     Xerox and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

26.     Xerox is a global provider of document processing services and printing machines to large corporations, small businesses, and government agencies.  The Company's primary reporting segments are: (1) Services, and (2) Document Technology.  The Services segment accounts for revenues and related costs from the delivery of business process and document outsourcing services.  The Document Technology segment reports Xerox's revenues and costs associated with the sale and support of printing and copying machines.

27.     Beginning in 2009, as the Company's hardware products were becoming less profitable, Xerox embarked on a new corporate strategy to transition into more of a computer services-related company.

28.     As part of Xerox's computer services transition strategy, the Company acquired Affiliated Computer Services, Inc. ("ACS") for $6.4 billion in February 2010.  Through the acquisition, Xerox took over ACS's Health Enterprise product, which Xerox would later tout as an important piece of its expanding computer services business.

29.     Health Enterprise is a Medicaid management software solution that helps state health departments run their Medicaid programs.  Xerox contracts with states to implement the Health Enterprise system in accordance with each state's specific requirements.  The product provides software solutions for states to manage all aspects of their contemporary Medicaid programs and to do so in accordance with government rules and regulations.

30.     At the time Xerox acquired ACS, ACS had already been awarded contracts to implement the software in a handful of states including New Hampshire and Montana.  In 2010 after acquiring ACS, Xerox was awarded a Health Enterprise contract with the state of California.

31.     Revenues and related costs associated with the Xerox's Health Enterprise implementation projects are reported within the Company's Business Processing Outsourcing ("BPO") division of the Services segment.

**Materially False and Misleading Statements Issued During the Class Period**

32.     The Class Period begins on April 23, 2012, when Xerox issued a press release announcing financial results for the first quarter ended March 31, 2012.  The release provided positive statements about the Company's Services segment growth, stating in part:

> Services now represents more than half of our total revenue and will continue to be the growth engine of our company as we expand our BPO offerings and strengthen our leadership in managed print services," said Ursula Burns, Xerox chairman and chief executive officer. "Our first-quarter results reflect the successful execution of our strategy: accelerate services, grow our install base of Xerox color products, and efficiently operate our business to deliver strong earnings and shareholder value.

33.     On May 1, 2012, Xerox filed its quarterly report on Form 10-Q for the first quarter ended March 31, 2012.  The Form 10-Q highlighted the growth of the Company's Services segment, stating:

> First quarter 2012 Services revenue of $2,821 million increased 9% from first quarter 2011, including a 1-percentage point negative impact from currency . . . BPO revenue increased 13% and represented 57% of total Services revenue. ***BPO growth was driven by the government healthcare,*** healthcare payer, financial services, and retail, travel and insurance businesses.

34.     On July 20, 2012, Xerox issued a press release announcing financial results for the second quarter ended June 30, 2012.  The release provided positive statements about the Company's Services segment growth, stating in part:

> Strong revenue from services—our growth driver today and in the future—gives us financial flexibility that helps minimize the impact from our slowing technology business," added Burns. "While ramping services for long-term growth, we're focused on maintaining market leadership in our technology segment and benefitting from its cash-generating business model.

35.     Also on July 20, 2012, during the Company's second quarter 2012 Earnings Call,

Defendant Blodgett made the following positive statements about the Company's Health

Enterprise business:

> As you know, we are very well positioned in all of the aspects of healthcare. Our Healthcare business has grown and is now a significant part of the overall portfolio and we have - we have Services in the - in the private sector both in the payor and the provider side and on the government side and so the whole effort around affordable care is something that we feel that we're very well positioned for as well as the - just the continued evolution on the private side. So, we feel very, very good about our position in healthcare.

36.     On July 31, 2012, Xerox filed its quarterly report on Form 10-Q for the second

quarter ended June 30, 2012.  The Form 10-Q highlighted the growth of its Services segment,

stating:

> Second quarter 2012 Services revenue of $2,806 million increased 5% from second quarter 2011, including a 2-percentage point negative impact from currency . . . BPO revenue increased 7%, including a 1-percentage point negative impact from currency, and represented 56% of total Services revenue. ***BPO growth was driven by the government healthcare,*** financial services and retail, travel and insurance businesses and was partially offset by lower transaction volumes from existing contracts.

37.     On October 23, 2012, Xerox issued a press release announcing financial results

for the third quarter ended September 30, 2012.  The release provided positive statements about

the Company's Services segment growth, stating in part:

> While we're pleased with the continued revenue growth trajectory in services, the profitability of a few contracts has been hampered by constraints in government spending, delaying implementation on committed projects that required our upfront investments," said Burns. "We believe this is a short-term consequence of current macro and political conditions. But, we remain cautious, and we are focused on reducing costs to absorb the impact and improve margins while investing in key areas of growth and delivering strong cash flow.

38.     On October 31, 2012, Xerox filed its quarterly report on Form 10-Q for the third

quarter ended September 30, 2012.  The Form 10-Q highlighted the growth of its Services

segment, stating:

> Services total revenue for the nine months ended September 30, 2013 of $8,820
> million increased 4% from the comparable prior year period, with no impact from
> currency.   BPO revenue increased 3% and represented 60% of total Services
> revenue. ***BPO growth was driven by our government healthcare,*** healthcare
> payer and customer care businesses as well as the benefits from recent
> acquisitions. Growth in these areas was partially offset by the elimination and
> runoff of our government and commercial student loan businesses.

39.     On February 21, 2013, Xerox filed its annual report on Form 10-K for the fiscal

year ended December 31, 2012.  The Form 10-K, which was signed by Defendants Burns and

Maestri, stated the following with regard to new Services contracts without disclosing that the

Company's existing Health Enterprise projects were experiencing major delays and cost

overruns:

> In order for our services business to continue its growth, we must successfully
> manage the ramp-up of services related to new contracts. If a client is not satisfied
> with the quality of work performed by us or a subcontractor, or with the type of
> services or solutions delivered, then we could incur additional costs to address the
> situation, the profitability of that work might be impaired and the client's
> dissatisfaction with our services could damage our ability to obtain additional
> work from that client.

40.     On April 23, 2013, during the Company's first quarter 2013 Earnings Call,

Defendant Burns made the following positive statements about the Company's Health Enterprise

business:

> State government we are seeing some good news particularly in healthcare. We
> have a strong position as you know in [Medicaid Management Information
> System] MMIS around the United States, and California is our big contract; New
> Hampshire just went live. We're doing well there, decision making.  So healthcare
> is a big segment for us. We do well there. ***And our profitability is improving in
> that segment actually very, very well.*** So I'm bullish about healthcare,
> government healthcare services.

41.     On October 24, 2013, during the Company's third quarter 2013 Earnings Call,

Defendant Mikells made positive statements about the progress of Xerox's Health Enterprise

implementations and downplayed rising costs associated with those projects, stating:

> Yeah so within BPO, health care is our fastest growing area and we're clearly
> benefiting from our number one position in MMIS, so on the Medicare side we're
> very strong. We were incredibly pleased that we've been actually standing up the
> new MMIS systems successfully. I think if you look in the newspapers recently if
> there's one thing that's clear standing up these systems is not particularly easy.
> And so while it's certainly come with a little bit higher cost that's pressuring
> margin, we continue to look at our overall position in healthcare and feel very
> good about the fact that we're participating across a number of different sectors.
> We obviously have a very strong position in MMIS in State and local
> government. We clearly have a strong payer position on the private side as well as
> within our support that we provide to hospitals. So we continue to look at the
> changes that are occurring in healthcare generally in part driven by the Affordable
> Care Act and view it as just a really great opportunity.

42.     On July 25, 2014, during the Company's second quarter 2014 Earnings Call,

Defendant Zapfel made the following positive statements about the Company's ability to recover

Health Enterprise costs:

> And our view would be, we've really learned a lot through the prior
> implementations. We think that we will be able to execute New York well for the
> citizens in the state and for us, so it won't be all of these new implementations
> start with not huge margins. You make your money over time, but that's the way
> we built into all of our guidance. So that's planned for us, we understand, ***we
> don't expect to have big unrecovered costs,*** but we do know that they don't start
> at high margin, that that's the business model design, that's not unique to any
> individual state, ***that's Services broadly and that's part of what we've accounted
> for in our commitments as we go forward.***

43.     The statements contained in ¶¶ 32-42 were materially false and/or misleading

when made because Defendants failed to disclose that: (1) the Company's existing Health

Enterprise projects were experiencing major delays and cost overruns; (2) the Company would

be unable to deliver Health Enterprise implementations at sustainable profits; and (3) as a result,

the Company's positive statements about its business, operations, and prospects lacked a reasonable basis.

### The Truth Begins to Emerge

44.     On October 22, 2014, Xerox issued a press release announcing financial results for the third quarter ended September 30, 2014, which included disappointing Services segment margins.  Defendants blamed lower than expected margins on continued high expense levels incurred on the prolonged implementation of its existing Health Enterprise projects.  Despite these mounting costs, Xerox assured investors that these costs were "more constrained in the third quarter" and the Company was making "good progress" within the Health Enterprise business.

45.     On news of the Company's disappointing margins, Xerox common stock fell $0.94 per share, or 7.50 percent, to close on October 22, 2014 at $11.57 per share.

46.     On January 30, 2015, during the Company's fourth quarter 2014 Earnings Call, Defendant Mikells made the following positive statements about the Company's Health Enterprise prospects:

> *[0]ur overall government healthcare solutions business stabilizing for us.*  It came in, I would say, very consistent w    ith our expectations and our overall margins came in consistent with our expectations as well.  So, we feel good about the fact that our governm ent healthcare business is performing a little bit better.  Obviously, we had a lot of pressure in    that business in 2014 and it' s one of the areas as we look to 2015 th at we're expecting continued improvement. So as you look towards 2015, our fourth quarter perform ance, I think, is right in line with what we expected in Services. And it give s us that much more confidence in our 50 basis point margin expansion expectations for next year.

47.     Thereafter, on April 24, 2015, Xerox issued a press release announcing financial results for the first quarter ended March 31, 2015, which included disappointing Services segment margins primarily due to "higher costs" associated with the prolonged implementation

of existing Health Enterprise projects.  Despite these mounting costs, Defendants continued to assure investors that the Company's Services business segment was performing well.

48.     On news of the Company's disappointing margins, Xerox common stock fell $1.10 per share, or 8.75 percent, to close at $11.48 per share on April 24, 2015.

49.     Then, on October 13, 2015, Xerox issued a press release announcing that the Company would be recording a $385 million pre-tax charge with its financial results for the third quarter ended September 30, 2015, primarily related to its California and Montana Health Enterprise contracts.  The press release stated in pertinent part:

**Xerox Provides Update on Government Healthcare Business Strategy**

Third-quarter 2015 results will reflect an  after-tax charge of approximately $240 million related to Health Enterprise Medicaid platform implementations

Reaffirms third-quarter adjusted earnings guidance, excluding charge

Business Wire

NORWALK, Conn. -- October 13, 2015

Xerox (NYSE:XRX) today provided an update regarding the strategic direction of its government healthcare business, specifically addressing the implementation of its Health Enterprise Medicaid platform in California and Montana.

"Today's announcement builds on the change in strategy from  last quarter," said Ursula  Burns, Xerox chairm  an and chief ex  ecutive  officer. "W e  are taking additional steps to improve our financial performance and significantly reduce the volatility of our results going forward."

Late  in the third quarter,   discussions  took place with   clients  in Calif ornia  and Montana  regarding the status and scope of     current Hea lth  Enterprise  platform projects,  which evolved to include options     to not f ully  complete  the projec ts. Based  on those discussions, Xerox believes     it is probab le  that it will n  ot  fully complete  the  implementation of th e  platform  in thes e  states. Xerox expects to continue  to process Medica  id  claims  using the exis  ting  legacy sys tems, thus providing   uninterrupted service for      the   states' healthcare providers and constituents.

Xerox remains committed to the implementation and ongoing operation of the Health Enterprise platform for its other state clients. In addition, the company will continue to provide other innovative government healthcare solutions to the 35 states and their citizens whom it serves. Xerox has a diverse portfolio of healthcare solutions and will focus on the more profitable market segments from which it derives over two thirds of its current government healthcare revenues.

As a result of these developments, Xerox is recording a pre-tax charge of approximately $385 million (approximately $240 million after-tax or 22 cents per share) in its third-quarter 2015 results reflecting estimated settlement costs and other impacts from these changes. The charge reflects approximately $130 million for the write-off of receivables and other related assets as well as approximately $30 million of non-cash impairment charges, with the remainder of the charge expected to be cash outflows in future quarters.

Xerox now expects a third-quarter 2015 GAAP loss from continuing operations of 3 to 5 cents per share. Adjusted earnings per share, excluding this charge, is expected to be in line with our guidance of 22 to 24 cents.

50. On news of the $385 million pre-tax charge and major contract terminations, Xerox common stock dropped $0.32 per share, or 3.17 percent over the following two trading sessions to close at $9.83 per share on October 14, 2015.

51. The statements contained in ¶¶ 44, 46, 47, 49 were materially false and/or misleading when made because Defendants failed to disclose that: (1) the Company's existing Health Enterprise projects were experiencing major delays and cost overruns; (2) the Company would be unable to deliver Health Enterprise implementations at sustainable profits; and (3) as a result, the Company's positive statements about its business, operations, and prospects lacked a reasonable basis.

**The Full Truth is Revealed**

52.     On October 26, 2015, before the trading session, Xerox issued a press release announcing financial results for the third quarter ended September 30, 2015, which missed analysts' estimates due in part to lost revenues from the termination of the California and Montana projects.  The Company explained that the loss of these contracts would result in lower revenues in each of the next three quarters.  In addition, Xerox announced that its Board of Directors had authorized a strategic review of the Company's entire business portfolio.

53.     On news of disappointing quarterly results caused by the termination of certain Health Enterprise projects, the Company's common stock fell $0.30 per share, or 3.00 percent, to close on October 26, 2015 at $9.73 per share.

54.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

**ADDITIONAL SCIENTER ALLEGATIONS**

55.     During the Class Period, as alleged herein, the Individual Defendants acted with scienter in that the Individual Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

56.     The Individual Defendants permitted Xerox to release these false and misleading statements and failed to file the necessary corrective disclosures, which artificially inflated the value of the Company's common stock.

57.     As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Xerox, their control over, receipt, and/or modification of Xerox's allegedly materially misleading statements and omissions, and/or their positions with the Company that made them privy to confidential information concerning Xerox, participated in the fraudulent scheme alleged herein.

58.     The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Xerox common stock by disseminating materially false and misleading statements and/or concealing material adverse facts.  The scheme deceived the investing public regarding Xerox's business, operations, and management and the intrinsic value of Xerox common stock and caused Plaintiff and members of the Class to purchase Xerox common stock at artificially inflated prices.

## LOSS CAUSATION/ECONOMIC LOSS

59.     During the Class Period, as detailed herein, Xerox and Individual Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Xerox common stock, and operated as a fraud or deceit on Class Period purchasers of Xerox common stock by misrepresenting the Company's business and prospects.  Later, when Defendants' prior misrepresentations and fraudulent conduct became known to the market, the price of Xerox common stock declined as the prior artificial inflation came out of the price over time.  As a result of their purchases of Xerox common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

60.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     the omissions and misrepresentations were material;

(c)     the Company's stock traded in an efficient market;

(d)     the misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's stock; and

(e)     Plaintiff and other members of the Class purchased Xerox common stock between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

61.     At all relevant times, the markets for Xerox common stock were efficient for the following reasons, among others:

(a)     as a regulated issuer, Xerox filed periodic public reports with the SEC;

(b)     Xerox regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services;

(c)     Xerox was followed by several securities analysts employed by major brokerage firm(s) who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firm(s) and that were publicly available and entered the public marketplace; and

(d)     Xerox common stock was actively traded in an efficient market, namely the NYSE, under the ticker symbol "XRX."

62.     As a result of the foregoing, the market for Xerox common stock promptly digested current information regarding Xerox' from publicly available sources and reflected such information in Xerox's stock price.  Under these circumstances, all purchasers of Xerox common stock during the Class Period suffered similar injury through their purchase of Xerox common stock at artificially inflated prices and the presumption of reliance applies.

63.     Further, to the extent that the Defendants concealed or improperly failed to disclose material facts with regard to the Company, Plaintiff is entitled to a presumption of reliance in accordance with *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972).

## NO SAFE HARBOR

64.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the speaker had actual knowledge that the forward-looking statement was materially false or

misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Xerox who knew that the statement was false when made.

## CLASS ACTION ALLEGATIONS

65.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons or entities who purchased or otherwise acquired Xerox common stock between April 23, 2012 and October 23, 2015, inclusive (the "Class"). Excluded from the Class are Defendants, members of the immediate family of each of the Individual Defendants, any subsidiary or affiliate of Xerox, and the directors and officers of Xerox and their families and affiliates at all relevant times.

66.    The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  As of June 30, 2016, Xerox had 1,013,303,609 shares of common stock outstanding.

67.    There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)    Whether the Exchange Act was violated by Defendants;

(b)    Whether Defendants omitted and/or misrepresented material facts;

(c)    Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)    Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

(e)     Whether the price of Xerox common stock was artificially inflated; and

(f)     The extent of damage sustained by Class members and the appropriate measure of damages.

68.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

69.     Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in securities class action litigation.  Plaintiff has no interests that conflict with those of the Class.

70.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## CLAIMS FOR RELIEF

### COUNT  I
### For Violation of Section 10(b) of the Exchange Act
### and Rule 10b-5 Against All Defendants

71.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

72.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

73.     Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)     Employed devices, schemes, and artifices to defraud;

(b)      Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)      Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Xerox common stock during the Class Period.

74.      Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Xerox common stock.  Plaintiff and the Class would not have purchased Xerox common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

75.      As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Xerox common stock during the Class Period.

### COUNT  II
### For Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

76.      Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

77.      The Individual Defendants acted as controlling persons of Xerox within the meaning of Section 20(a) of the Exchange Act.  By virtue of their positions and their power to control public statements about Xerox, the Individual Defendants had the power and ability to control the actions of Xerox and its employees.  By reason of such conduct, Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.      Declaring this action to be a proper class action pursuant to Federal Rule of Civil

Procedure 23;

B.      Awarding Plaintiff and the members of the Class damages and interest;

C.      Awarding Plaintiff's reasonable costs, including attorneys' fees; and

D.      Awarding such equitable/injunctive or other relief as the Court may deem just and

proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


DATED:  October 21, 2016                    **LABATON SUCHAROW LLP**

                                            */s/ Christopher J. Keller*
                                            Christopher J. Keller
                                            Eric J. Belfi
                                            Francis P. McConville
                                            140 Broadway
                                            New York, New York  10005
                                            Telephone: (212) 907-0700
                                            Facsimile: (212) 818-0477
                                            Emails: ckeller@labaton.com
                                                    ebelfi@labaton.com
                                                    fmcconville@labaton.com

                                            *Attorneys for Plaintiff Oklahoma*
                                            *Firefighters Pension and Retirement System*

## CERTIFICATION

I, Robert E. Jones, as Executive Director of Oklahoma Firefighters Pension and Retirement System ("Oklahoma Fire"), hereby certify as follows:

1.       I am fully authorized to enter into and execute this Certification on behalf of Oklahoma Fire.  I have reviewed a complaint filed against Xerox Corporation ("Xerox") alleging violations of the federal securities laws;

2.       Oklahoma Fire did not purchase common stock of Xerox at the direction of counsel or in order to participate in any private action under the federal securities laws;

3.       Oklahoma Fire is willing to serve as a lead plaintiff and representative party in this matter, including providing testimony at deposition and trial, if necessary;

4.       Oklahoma Fire's transactions in Xerox common stock during the Class Period are reflected in Exhibit A, attached hereto;

5.       Oklahoma Fire sought to serve as a lead plaintiff in the following class actions under the federal securities laws filed during the last three years:

*Santore v. Ixia*, No. 2:13-cv-8440 (C.D. Cal.)
*Hatamian v. Advanced Micro Devices, Inc.*, No. 4:14-cv-0226 (N.D. Cal.)
*Oklahoma Firefighters Pension & Retirement System v. K12, Inc.*, No. 1:14-cv-0108 (E.D. Va.)
*Awad v. Herbalife, Ltd.*, No. 2:14-cv-2850 (C.D. Cal.)
*In re Ply Gem Holdings, Inc. Securities Litigation*, No. 1:14-cv-3577 (S.D.N.Y.)
*In re Rocket Fuel, Inc. Securities Litigation*, No. 4:14-cv-3998 (N.D. Cal.)
*Rihn v. ACADIA Pharmaceuticals Inc.*, No. 3:15-cv-0575 (S.D. Cal.)
*Glore v. SanDisk Corp.*, No. 3:15-cv-1455 (N.D. Cal.)
*Oklahoma Firefighters Pension & Retirement System v. Rayonier Advanced Materials*,
No. 3:15-cv-0546 (M.D. Fla.)
*City of St. Clair Shores Police & Fire Retirement System v. Nationstar Mortgage Holdings, Inc.*,
No. 0:15-cv-61170 (S.D. Fla.)
*Avila v. LifeLock, Inc.*, No. 2:15-cv-1398 (D. Ariz.)
*Markman v. Whole Foods Market Inc.*, No. 1:15-cv-0681 (W.D. Tex.)
*In re Broadcom Corp. Stockholder Litigation*, No. 8:15-cv-00979 (C.D. Cal.)
*Ho v. Flotek Industries, Inc.*, No. 4:15-cv-3327 (S.D. Tex.)
*Murphy v. Precision Castparts Corp.*, No. 3:16-cv-00521 (D. Or.)

6.      Oklahoma Fire sought to serve as a representative party, but not as a lead plaintiff, in the following class action under the federal securities laws filed during the last three years:

*Oklahoma Firefighters Pension & Retirement System v. Neustar, Inc.*,
No. 1:14-cv-0885 (E.D. Va.)

7.      Oklahoma Fire is currently serving as a lead plaintiff in the following class actions filed under the federal securities laws during the last three years:

*Santore v. Ixia*, No. 2:13-cv-8440 (C.D. Cal.)
*In re Rocket Fuel, Inc. Securities Litigation*, No. 4:14-cv-3998 (N.D. Cal.)
*Oklahoma Firefighters Pension & Retirement System v. Rayonier Advanced Materials*,
No. 3:15-cv-0546 (M.D. Fla.)
*City of St. Clair Shores Police & Fire Retirement System v. Nationstar Mortgage Holdings, Inc.*,
No. 0:15-cv-61170 (S.D. Fla.)
*Avila v. LifeLock, Inc.*, No. 2:15-cv-1398 (D. Ariz.)
*In re Broadcom Corp. Stockholder Litigation*, No. 8:15-cv-00979 (C.D. Cal.)
*Murphy v. Precision Castparts Corp.*, No. 3:16-cv-00521 (D. Or.)

8.      Beyond its pro rata share of any recovery, Oklahoma Fire will not accept payment for serving as a lead plaintiff and representative party on behalf of the Class, except the reimbursement of such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct this 21st day of October, 2016.

Robert E. Jones
*Executive Director*
*Oklahoma Firefighters Pension and Retirement System*