UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                               :

OKLAHOMA FIREFIGHTERS PENSION AND    :
RETIREMENT SYSTEM, individually and on behalf of  :
all other similarly situated,                       :

                               Plaintiff,     :

                                 :

                    -v-                     :

                                 :

XEROX CORPORATION, URSULA M. BURNS,     :
LUCA MAESTRI, KATHRYN A. MIKELLS, LYNN R. :
BLODGETT, and ROBERT K. ZAPFEL,     :

                               :

                        Defendants.   :

                               :
------------------------------------------------------------------X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
DOC #:_____
DATE FILED: _2-28-17_

16 Civ. 8260 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

      Plaintiff Oklahoma Firefighters Pension and Retirement System brings this putative class

action, claiming that defendant Xerox Corporation ("Xerox") and five of its officers committed

securities fraud by making false and misleading statements and by failing to disclose material

adverse information about their business and outlook between April 23, 2012 and October 23,

2015 (the "Class Period").  Plaintiff brings claims under Sections 10(b) and 20(a) of the

Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78(t)(a), along

with Rule 10b-5 promulgated by the Securities and Exchange Commission ("SEC"), 17 C.F.R.

§ 240.10b-5.  Plaintiff specifically faults defendants for not disclosing that projects within

Xerox's Health Enterprise business were experiencing significant delays and cost overruns, and

that Xerox would be unable to offer Health Enterprise products at sustainable profits.  After

Xerox eventually made corrective disclosures, plaintiff alleges, Xerox's stock price dropped,

harming plaintiffs.

Before the Court are motions from two competing movants, each seeking appointment as lead plaintiff and appointment of their respective attorneys as lead counsel.  These are (1) the Arkansas Public Employees Retirement System ("APERS"), an institutional investor, and (2) IWA Forest Industry Pension Plan ("IWA Forest"), a pension plan.

For the following reasons, the Court appoints APERS as lead plaintiff, appoints APERS's attorney, Kessler Topaz Meltzer & Check, LLP, as lead counsel, and Labaton Sucharow LLP as class liaison counsel.

## I.    Background[1]

Xerox is a global provider of printing machines and document processing services.  It is listed on the New York Stock Exchange with the ticker symbol "XRX."  The five individual defendants were Xerox officers within the class period.  Complaint ¶¶ 18–23.[2]  These officers, plaintiffs allege, had the authority to control the contents of Xerox's submissions to the SEC, press releases, and presentations to market participants such as securities analysts, money portfolio managers, and institutional investors.  *Id.* ¶ 24.

Xerox has two primary business divisions for reporting purposes:  Services, which accounted for about 55 percent of Xerox's total revenue in 2015; and Document Technology,

---

[1] The Court draws its summary of the facts from the Complaint.  Dkt. 1 ("Complaint").  The Court treats these facts as true solely for the purpose of resolving this motion.  *See In re Braskem S.A. Securities Litig.*, No. 15 Civ. 5132 (PAE), 2015 WL 5244735, at *1 n.1 (S.D.N.Y. Sept. 8, 2015).

[2] Ursula M. Burns is Xerox's chief executive officer and the chair of its board of directors; Luca Maestri was Xerox's chief financial officer from the start of the Class Period until his resignation in February 2013; Kathryn A. Mikells was Xerox's chief financial officer from May 2013 until her resignation in October 2015; Lynn R. Blodgett was president of the Xerox Services division and vice president of Xerox from the start of the Class Period until his resignation in March 2014; and Robert K. Zapfel has been Xerox's president of Xerox Services and an executive vice president since April 2015.  Complaint ¶¶ 19–23.

which includes the sale and support of printing and copying machines, and which accounted for about 40 percent of Xerox's total revenue in 2015. *Id.* ¶ 2. Xerox's Services division offers a "Health Enterprise" service, a software management product designed to help state agencies administer Medicaid programs in accordance with federal regulations. *Id.* ¶ 3. Before and during the Class Period, Xerox sold this product to states. *Id.*

During the Class Period, Xerox promoted its Health Enterprise business as a valuable growth area, with low costs and high profit margins. Plaintiff alleges, however, that defendants' statements about the profitability and growth potential of the Health Enterprise business were materially false and misleading. Specifically, plaintiff alleges, defendants did not disclose that (1) Xerox's then-existing Health Enterprise projects were experiencing significant delays and cost overruns; and (2) Xerox would be unable to deliver Health Enterprise products at sustainable profits. These omissions made defendants' optimistic statements about Xerox's Health Services business, operations, and potential inaccurate and unreasonable. *Id.* ¶ 4.

Plaintiff identifies four announcements within the Class Period revealing problems associated with its Health Enterprise product that allegedly caused Xerox's stock price to drop.

On October 22, 2014, Xerox issued a press release announcing its third-quarter 2014 results, which revealed disappointing margins in the Health Services segment. Xerox blamed the low margins on high costs resulting from the prolonged implementation of its existing Health Enterprise projects. Notwithstanding these "mounting costs," plaintiffs allege, "Xerox assured investors that these costs were 'more contained in the third quarter' and [Xerox] was making 'good progress' within Health Enterprise." *Id.* ¶ 5. That day, Xerox's common stock fell $0.94 per share, a decrease of 7.5 percent, to close at $11.57 per share on October 22, 2014. *Id.* ¶ 6.

3

On April 24, 2015, Xerox announced its first quarter 2015 financial results, which again reflected disappointing margins in the same business, again due to higher costs associated with the continued implementation of Health Enterprise projects.  Nonetheless, plaintiffs allege, "defendants continued to assure investors that [Xerox's] Services business segment was performing well."  *Id.* ¶ 7.  That day, Xerox's common stock fell $1.10 per share, a decrease of 8.75 percent, and closed at $11.48.  *Id.* ¶ 8.

On October 13, 2015, Xerox issued a press release announcing that it would be taking a $385 million pre-tax charge with its third quarter 2015 results.  This charge related to assets and unrecoverable costs part of the implementation of Health Enterprise projects.  Xerox disclosed, too, that it would not complete its Health Enterprise projects in California and Montana.  *Id.* ¶ 9. The following day, Xerox common stock fell by $0.32 per share, a decrease of 3.17 percent, closing at $9.83 per share on October 14, 2015.  *Id.* ¶ 10.

Finally, on October 26, 2015, Xerox released its financial results for the third quarter of 2015.  These results fell short of analysts' estimates, partly because of revenues lost as a result of the termination of the projects in California and Montana.  Xerox admitted it would experience lower revenues as a result of the loss of these contracts.  It also announced that its directors had authorized a strategic review of Xerox's business portfolio.  *Id.* ¶ 11.  That day, Xerox's common stock fell $0.30 per share, a decrease of 3 percent, closing at $9.73 per share on October 26, 2015.  *Id.* ¶ 12.

Plaintiffs bring two claims.  The first, against all defendants, is for a violation of Section 10(b) of the Exchange Act and Rule 10b-5, based on Xerox's dissemination and/or approval of false and misleading statements and material omissions concerning Health Enterprise.  *Id.* ¶¶ 71– 75.  The second, against only the individual defendants, is for a violation of Section 20(a) of the

Exchange Act, claiming that the individual defendants had the power and ability to control Xerox's actions and thus are liable for the Xerox's actionable statements and omissions. *Id.* ¶¶ 76–77.

## II.   Procedural History Relevant to the Pending Lead Plaintiff Motions

On October 21, 2016, plaintiffs filed the Complaint.  Dkt. 1.  On December 23, 2016, four movants moved to be appointed lead plaintiff:  (1) IWA Forest, Dkt. 20; (2) Jim Welton, Dkt. 23; (3) the City of Melbourne Police Officers' Retirement System ("MPORS"), Dkt. 26; and (4) APERS, Dkt. 29.  Each motion included a memorandum of law and a declaration in support.

On December 28, 2016, the Court, pursuant to a stipulation by the parties and pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3), set out by order a schedule for the filing of pleadings after the Court's selection of the lead plaintiff.  Dkt. 32.  The Court (1) ordered that within 60 days of its appointment of the lead plaintiff, the lead plaintiff is to file an amended complaint or designate the Complaint as the operative complaint; and that defendants are to respond to the operative complaint either 60 days after the filing of an amended complaint, or, if no amended complaint is filed, 60 days after the end of the 60-day period following the Court's issuance of an order designating the lead plaintiff; and (2) the Court set a schedule for briefing of any motion to dismiss.  *Id.*

On January 6, 2017, MPORS withdrew its motion to be appointed lead plaintiff, Dkt. 33; and Welton and APERS filed oppositions to the other movants' motions, Dkts. 34 and 35, respectively.  On January 13, 2017, APERS filed a reply brief.  Dkt. 36.  On January 19, 2017, Welton withdrew his motion to be appointed lead plaintiff, on the ground that, upon review of the motions, he does not have the "largest financial interest in the relief sought by the class" as

required by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), among the movants.  Dkt. 37.

That left APERs and IWA Forest as the only entities vying to serve as lead plaintiff.

### III.     Selection of Lead Plaintiff:  The PSLRA Requirements

The PSLRA governs motions for appointment of lead plaintiff and approval of lead

counsel in putative class actions brought under the securities laws.  *See In re Braskem S.A. Sec.*

*Litig.*, No. 15 Civ. 5132 (PAE), 2015 WL 5244735, at *4 (S.D.N.Y. Sept. 8, 2015); *In re*

*Millennial Media, Inc. Sec. Litig.*, 87 F. Supp. 3d 563, 568–69, (S.D.N.Y. 2015); *Bo Young Cha*

*v. Kinross Gold Corp.*, No. 12 Civ. 1203 (PAE), 2012 WL 2025850, at *2 (S.D.N.Y. May 31,

2012).  The PSLRA directs the court to appoint as lead plaintiff the party or parties "most

capable of adequately representing the interests of class members."  15 U.S.C. § 78u-

4(a)(3)(B)(i).  Under the PSLRA, there is a rebuttable presumption that the most adequate

plaintiff is the person or group of persons that (1) has either "filed a complaint or made a motion

in response to a notice," *id.* § 78u-4(a)(3)(B)(iii)(I)(aa); (2) in the determination of the Court, has

the "largest financial interest in the relief sought by the class," *id.* § 78u-4(a)(3)(B)(iii)(I)(bb);

and (3) satisfies all the requirements of Federal Rule of Civil Procedure 23, which governs class

actions, *see id.* § 78u-4(a)(3)(B)(iii)(I)(cc).

Here, with the other two movants having stepped aside, the Court must appoint either

APERS or IWA Forest as lead plaintiff.  (Although not opposing the other motions for

appointment, IWA Forest has not withdrawn its own.)  The Court accordingly applies the

PSLRA factors to APERS's and IWA Forest's competing bids.

### A.     Notice

On October 21, 2016, plaintiff filed the Complaint, and, on October 24, 2016, plaintiff

published notice of this action in *Globe Newswire*, Declaration of Christopher J. Keller ("Keller

Decl."), Dkt. 31, Ex. C.  The deadline to file motions to serve as lead plaintiff was therefore

December 23, 2016.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) (any member of the purported class

may move to serve as lead plaintiff not later than 60 days after the publishing of notice of the

action).  Both APERS and IWA Forest thus satisfy the first PLSRA requirement, as each filed a

motion for lead plaintiff status by that date.  *See id.* § 78-u4(a)(3)(B)(iii)(I); *City of Monroe*

*Emps. Ret. Sys. v. Hartford Fin. Servs. Grp. Inc.*, 269 F.R.D. 291, 293 (S.D.N.Y. 2010).

### B.     Financial Interest

To determine who has the largest financial stake in the litigation, courts have traditionally

applied a four-factor test, first set forth in *Lax v. First Merchants Acceptance Corp.*, No. 97 Civ.

2715 (DHC), 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997).  These "*Lax*" factors include (1)

the total number of shares purchased during the class period; (2) the net shares purchased during

the class period (meaning the difference between the number of shares purchased and the number

of shares sold during the class period); (3) the net funds expended during the class period

(meaning, the difference between the amount spent to purchase shares and the amount received

for the sale of shares during the class period); and (4) the approximate losses suffered.  *City of*

*Monroe*, 269 F.R.D. at 293; *Lax*, 1997 WL 461036, at *5.

Courts have consistently held that the fourth factor, the magnitude of the loss suffered, is

most significant.  *See, e.g.*, *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) ("Although

courts have differed on how much weight to assign to each of the *Lax* factors, we, as have other

courts, shall place the most emphasis on the last of the four factors: the approximate loss suffered

by the movant."), *reconsidered on other grounds*, *In re IMAX Sec. Litig.*, No. 06 Civ. 6128

(NRB), 2009 WL 1905033 (S.D.N.Y. June 29, 2009); *Bo Young Cha*, 2012 WL 2025850, at *2;

*In re Braskem*, 2015 WL 5244735, at *4–5; *Bhojwani v. Pistiolis*, No. 06 Civ. 13761 (CM)

7

(KNF), 2007 WL 2197836, at *6–7 (S.D.N.Y. July 31, 2007); *see also Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 (S.D.N.Y. 2011) ("[I]n determining the largest financial interest, 'most courts simply determine which potential lead plaintiff has suffered the greatest total losses.'" (quotation omitted)).

Here, the lead plaintiff candidates suffered significantly different amounts upon the drops in Xerox's stock price during the Class Period.  APERS lost either $1,612,283 under the first-in-first-out ("FIFO") method or $1,486,866 under the last-in-first-out ("LIFO") method.  APERS Memorandum of Law in Support, Dkt. 30, at 6; *see* Keller Decl. Ex. B.[3]  IWA Forest did not calculate its losses in its motion, instead only providing its transactions list, *see* Declaration of Frederic S. Fox ("Fox Decl."), Dkt. 22, Ex. B.  But APERS calculated IWA Forest's losses using IWA Forest's transactions list and determined that it lost $427,384 under the LIFO method, APERS Memorandum of Law in Opposition, Dkt. 35, at 4 & n.3.  That figure appears correct upon the Court's review, and IWA Forest has not contested it.  APERS's financial loss, nearly three times greater than IWA Forest's financial loss, is therefore by far the larger.

Because APERS suffered the loss of the greatest magnitude, the most significant factor in the financial interest analysis, the financial interest analysis tilts strongly in APERS's favor.  Further, APERS is an institutional investor, which Congress prefers for a lead plaintiff.  *See, e.g.*, H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) ("[I]ncreasing the role of institutional investors in class actions will ultimately benefit

---

[3] Under FIFO, stocks acquired first are assumed to have been sold first in the calculation of losses, while under LIFO stocks acquired most recently are assumed to have been the first sold. *Bo Young Cha*, 2012 WL 2025850, at *3.  These methods can yield different results when, as of the start of the class period, the plaintiff held earlier-purchased shares of the issuer. *Id.*  "The overwhelming trend both in this district and nationwide has been to use LIFO to calculate . . . losses." *Id.*

shareholders and assist courts by improving the quality of representation in securities class actions."); *Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("[T]he PSLRA was passed . . . to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one." (quotation omitted)); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005) ("[T]he PSLRA was designed to favor institutional investors[.]").

This is also not a case in which the class's interests require appointing co-lead plaintiffs. There is, for example, no claim that the investor that suffered the greatest losses did not hold the relevant securities during the full class period, whereas a different investor did. *See, e.g.*, *Millennial Media, Inc. Sec. Litig.*, 87 F. Supp. 3d at 570. Here, APERS appears to have held Xerox stock for the entire Class Period. Keller Decl. Ex. B.

The factor of financial interest thus favors APERS.

## C.     Rule 23 Requirements

The PSLRA's final requirement is that the proposed lead plaintiff satisfy Rule 23's requirements for class certification: numerosity, commonality, typicality, and adequacy. But, at this early stage of litigation, "only the last two factors—typicality and adequacy—are pertinent." *Bo Young Cha*, 2012 WL 2025850, at \*6 (quoting *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004)).

As for typicality, a lead plaintiff's claims are typical when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173–74 (S.D.N.Y. 2010) (citations omitted). "The claims of [the plaintiffs] are typical of the class because their claims and injuries arise from the same conduct from which the other class members' claims and

injuries arise." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49–50 (S.D.N.Y. 1998) (citations omitted).  As for adequacy, a lead plaintiff satisfies this requirement when it "does not have interests that are antagonistic to the class that [it] seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class that [it] seeks to represent." *Glauser*, 236 F.R.D. at 189 (citing *Dietrich v. Bauer*, 192 F.R.D. 119, 124 (S.D.N.Y. 2000)).

APERS satisfies these requirements.  Like the other class members, it purchased Xerox stock during the class period at prices allegedly improperly high because of defendants' allegedly materially false and misleading statements, and thereby was damaged.  Its claims are therefore typical.  It suffered the greatest loss of the lead plaintiff candidates, so its interests are aligned with the other class members, and it has no conflicting interests.  As such, APERS is also an adequate lead plaintiff.  Further, APERS is a sophisticated institutional investor overseeing more than $7 billion of assets under management for more than 90,000 participants.  Notably, IWA Forest has not contested APERS's typicality or adequacy, or claimed that APERS is subject to unique defenses that would render APERS incapable of adequately representing the class.  15 U.S.C. § 78u-(4)(a)(3)(B)(iii)(II).

The Court therefore appoints APERS as lead plaintiff because it has satisfied all of the PSLRA requirements at this early stage in the case.

## IV.   Appointing Lead Counsel

The most adequate plaintiff may retain counsel to represent the class, subject to the Court's approval.  15 U.S.C § 78u-(4)(a)(3)(B)(v).  APERS has selected the law firm of Kessler Topaz Meltzer & Check, LLP as lead counsel and Labaton Sucharow LLP as liaison counsel for the class.  Having reviewed the firms' submissions about their pertinent background and

experience, including litigating securities class actions, the Court finds these firms qualified to

serve as lead counsel and liaison counsel.  Accordingly, the Court appoints Kessler Topaz

Meltzer & Check, LLP as lead counsel and appoints Labaton Sucharow LLP as liaison counsel.

## CONCLUSION

For the foregoing reasons, the Court grants APERS's motion to serve as lead plaintiff and

denies all other motions to serve as lead plaintiff.  The Court appoints Kessler Topaz Meltzer &

Check, LLP as lead counsel and appoints Labaton Sucharow LLP as liaison counsel.

In accordance with the stipulation and order governing the next steps in this case,

Dkt. 32, APERS is either to file and serve an amended complaint or designate the Complaint as

the operative complaint in this case within 60 days of this order—*i.e.*, by May 1, 2017.

Defendants may then respond to the then-operative complaint under the schedule set forth in

Dkt. 32—either 60 days after the filing of an amended complaint, or, if no amended complaint is

filed, by June 30, 2017.

The Clerk of Court is respectfully directed to terminate all pending motions.

SO ORDERED.

_____
Paul A. Engelmayer
United States District Judge

Dated: February 28, 2017
         New York, New York